Gregory T. Ross and Centrum II Associates, Plaintiffs-Respondents,

v.

SPECIALTY RISK CONSULTANTS, INC., Bonnie Lagiglio, Laura Weber-Taylor, Plaza Partners, Lila Mae Torello, Specialty Finance, Inc., Betty Loren-Maltese, Donald Felthouse, Barbara Rzasa, S&O Lock Service and Coleman Engineering Co. of Iron, Defendants,

TOWN OF CICERO, Defendant-Appellant,

ANTHONY MARANO COMPANY and Josephine Marano, Defendants-Respondents.

Court of Appeals

*No. 00–0089. Submitted on briefs August 14, 2000.—Decided November 7, 2000.*

2000 WI App 258

(Also reported in 621 N.W.2d 669.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas M. Olejniczak* and *Robert M. Charles* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Kim A. Coggins,* of *Coggins & Wolfe* of Menominee, Michigan.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Howard B. Tolkan* of *McCarty, Lenz & Tolkan, S.C.* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The Town of Cicero appeals a summary judgment of foreclosure discharging its lis pendens and dismissing it as a defendant. The Town argues that the court erred by (1) discharging its lis pendens; (2) dismissing it as a party; and (3) entering summary judgment in favor of Centrum II Associates and the Marano Company.

¶ 2. The primary issue is whether the Town's action in Illinois for a constructive trust on property in Wisconsin permits it to file a lis pendens on that property. We conclude that the Town's action to impose a constructive trust on real estate is one that might change interests in real property under WIS. STAT. § 840.10(1)(a)[1] and, therefore, the Town's lis pendens is permitted. Also, because the Town claimed an interest in the subject matter of the litigation, the court should not have dismissed the Town as a party to the foreclosure action. *See* WIS. STAT. § 803.03(1)(b). Whether the Town's answer, affidavits and supporting documents raise disputes of material fact was not addressed by the trial court. We therefore reverse the summary foreclosure judgment and remand to permit the Town to raise its defenses to the summary judgment motion.

## FACTS

¶ 3. In 1997, the Town filed a complaint in Illinois against Specialty Risk Consultants, Inc., and Plaza Partners, among others, alleging that they participated in an embezzlement scheme to defraud millions of dollars from the Town's self-insurance program. The Town alleged in the Illinois suit that Specialty Risk and Plaza Partners used some of the

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

27

embezzled funds to acquire the Four Seasons Golf Course in Marinette County, Wisconsin. The Town claimed damages and the right to equitable relief in the form of a constructive trust over the golf course. The same year, the Town filed several lis pendens pertaining to the golf course in Marinette County, providing notice of the pending Illinois lawsuit.

¶ 4. In 1998, Centrum II Associates and Gregory Ross (collectively, Centrum) commenced the foreclosure action giving rise to this appeal. Centrum claimed that Plaza Partners had defaulted on its promissory note secured by a mortgage on the golf course. The complaint also alleged that Plaza Partners had quitclaimed the golf course to Specialty Risk, which owned record title. The complaint further alleged that the Town of Cicero "may claim some right, title and interest in the subject property by virtue of various Lis Pendens notices."

¶ 5. Also named as defendant was the Anthony Marano Company, which had received a note from Plaza Partners secured by a mortgage on the golf course, and Josephine Marano. The Marano Company had assigned its note and mortgage to Josephine. The Marano Company and Josephine (collectively, Marano) cross-claimed for a judgment of foreclosure.

¶ 6. The Town answered, denying the complaint's allegations and the cross-claim, and alleged as an affirmative defense that Centrum did not loan funds to Plaza Partners. It also alleged that Plaza Partners and Specialty Risk used funds belonging to the Town to pay to Centrum installments on the mortgage it sought to foreclose. The Town complained that its discovery attempts were thwarted by several parties' refusals to answer questions on the basis of their Fifth Amendment privileges.

28

¶ 7.   Centrum and Marano moved for summary judgments of foreclosure. The Town objected and filed affidavits and supporting documents detailing the allegations of the pending Illinois lawsuit that sought the constructive trust over the golf course. The Town also asserted that Centrum had not made the advances contemplated by the note. Additionally, the Town contended that the mortgage documents were defective because they failed to name Centrum as mortgagee. It also claimed that because the Town's money was used to purchase the golf course, the Marano mortgage could not be a purchase money mortgage as alleged.

¶ 8.   The trial court determined the allegations of the complaint were proven and there were no disputes of material fact. It entered summary judgment of foreclosure. It concluded that because the Town was not a judgment creditor, it was therefore "at best a contingent judgment creditor." The court stated: "I don't think you have any standing in this case." The court ruled that the "Town of Cicero lacks an interest in the Real Property and based upon the lack of such interest, the Notices of Lis Pendens previously filed by the Town of Cicero should be discharged and the Town of Cicero dismissed as party to this proceeding." The Town appeals the summary judgment of foreclosure.[2]

---

[2] In its statement of facts, Centrum contends that even if the Town were to obtain a constructive trust, its interest would be subordinate to the mortgage holders. This is a legal issue that has yet to be litigated. Because the parties have not briefed the issue, and because it was not ruled on by the circuit court, we do not address it.

## STANDARD OF REVIEW

¶ 9.  When reviewing a summary judgment, we perform the same function as the trial court and our review is de novo. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. *See* WIS. STAT. § 802.08(2). The issue here requires us to construe WIS. STAT. § 840.10. On questions of statutory construction, we do not defer to the circuit court's interpretation. *See Kerkvliet v. Kerkvliet*, 166 Wis. 2d 930, 939, 480 N.W.2d 823 (Ct. App. 1992).[3]

¶ 10.  In construing a statute, we are to give effect to the legislature's intent. *See id*. To ascertain legislative intent, we look first to the statute's language. *See id*. Here, because there is no claim that the statute is ambiguous, we apply its plain language according to its ordinary and accepted meaning. *See id*.

## LIS PENDENS

¶ 11.  WISCONSIN STAT. § 840.10 provides that in an action where relief is demanded affecting real property, which "might confirm or change interests in the real property," the plaintiff shall file in the county

---

[3] Although some courts have held that whether to discharge a lis pendens is a matter of trial court discretion, for example, *see White v. Wensauer*, 702 P.2d 15, 17–18 (Okla. 1985), neither party has discussed this issue and therefore, we do not address it. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16 (1992) (We have no duty to consider any issues other than those presented to us.).

where the land is located a lis pendens containing the names of the parties, the object of the action and a description of the land affected.[4] The test to be applied "is only whether the relief demanded '*might* confirm or change interests in the real property.'" *Interlaken Serv. Corp. v. Interlaken Condo. Ass'n,* 222 Wis. 2d 299, 307, 588 N.W.2d 262 (Ct. App. 1998). "The statute further provides that from the time of filing of the lis

[4] WISCONSIN STAT. § 840.10 provides in part:

(1) (a) In an action where relief is demanded affecting described real property which relief might confirm or change interests in the real property, after the filing of the complaint the plaintiff shall present for filing or recording in the office of the register of deeds of each county where any part thereof is situated, a lis pendens containing the names of the parties, the object of the action and a description of the land in that county affected thereby. In any action if the defendant asks relief on a counterclaim or cross-complaint, which contains a legal description of the real estate and seeks such relief, after the filing of the counterclaim or cross-complaint the defendant shall present for filing or recording a lis pendens. From the time of filing or recording every purchaser or encumbrancer whose conveyance or encumbrance is not recorded or filed shall be deemed a subsequent purchaser or encumbrancer and shall be bound by the proceedings in the action to the same extent and in the same manner as if the purchaser or encumbrancer were a party thereto. In any such action in which a lis pendens has been filed or recorded, if the party who presents for filing or recording the lis pendens fails for one year after the filing or recording thereof to serve and file proof of service of the summons or the counterclaim or cross-complaint on one or more of the adverse parties, the lis pendens shall be void, and upon motion and proof the court may order it discharged. Judgment shall not be entered in favor of the party required to present for filing or recording a lis pendens until 20 days after the lis pendens has been filed or recorded.

. . . .

(3) The lis pendens may be discharged upon the condition and in the manner provided by s. 811.22 for discharging an attachment or by s. 806.19 (1) (a) for satisfying a judgment. An instrument filed before May 1, 1951, but in accordance with this subsection shall be a discharge of the lis pendens described therein.

pendens a subsequent purchaser or encumbrancer shall be bound by the proceedings in the action to the same extent and in the same manner as if a party thereto." *Belleville State Bank v. Steele*, 117 Wis. 2d 563, 566–67, 345 N.W.2d 405 (1984). The primary purpose of § 840.10 is to protect the courts' and the litigants' interests in the finality of the judgment, as well as the additional objective of giving prospective purchasers and encumbrancers notice of pending actions so that they may avoid "buying a lawsuit." *Id.* [5]

¶ 12.   Our supreme court has concluded that interpreting WIS. STAT. § 840.10 to include actions filed in courts outside the state furthers the legislative objectives without unduly burdening the transfer of real property in this state. *See Belleville State Bank*, 117 Wis. 2d at 576. Although a judicial decree cannot change title to real property that is beyond the territorial limits of the court's jurisdiction:

> Nevertheless this court has recognized that a divorce court outside this state having personal jurisdiction of a party may order that party to execute a conveyance of real property located in Wisconsin. Because we have recognized that title to real property located in Wisconsin may be affected,

---

[5] "The common law rule of lis pendens, a phrase that literally means a pending lawsuit, comports with the maxim *Pendente lite nihil innovetur*: 'Nothing should be changed during the pendency of an action.' " *Belleville State Bank v. Steele*, 117 Wis. 2d 563, 571, 345 N.W.2d 405 (1984). A lis pendens "is a legal notice to any such person not having knowledge of the proceedings at the time his interest was procured or derived. As to the parties to the action . . . who appear and participate in the proceedings, the *lis pendens* serves no real purpose and actually has no application." *Hailey v. Zacharias*, 39 Wis. 2d 536, 537–38, 159 N.W.2d 667 (1968).

albeit indirectly, by a divorce judgment of a sister state, we conclude that a foreign divorce action in which relief is demanded affecting described real property in Wisconsin falls within the purview of sec. 840.10(1).

*Id.* at 577.

## CONSTRUCTIVE TRUST

¶ 13.   The first issue we must address is whether the Illinois action seeking the imposition of a constructive trust over the golf course is one that "might . . . change interests in the real property" within the meaning of WIS. STAT. § 840.10. We conclude that it is. "A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form." *Warsco v. Oshkosh Savings & Trust Co.*, 190 Wis. 87, 90, 208 N.W. 886 (1926) (quoting 3 POMEROY, EQUITY JURISPRUDENCE § 1051, at 2397–2401 (4th ed. 1918)). It is an equitable device employed to prevent fraud or abuse of a confidential relationship and is implied to accomplish justice. *See In re Massouras' Estate*, 16 Wis. 2d 304, 312, 114 N.W.2d 449 (1962).

¶ 14.   "In the constructive trust case, the defendant has legal rights in something that in good conscience belongs to the plaintiff." 1 DAN B. DOBBS, LAW OF REMEDIES § 4.3(1), at 587–88 (2d ed. 1993). "The property is 'subject to a constructive trust,' and the defendant is a 'constructive trustee.' " *Id.* "The defendant is thus made to transfer title to the plaintiff who is, in the eyes of equity, the true 'owner.' " *Id.* "When equity imposes a constructive trust upon an asset of the defendant, the plaintiff ultimately gets formal legal title." *Id.* at § 4.3(2), at 589.

¶ 15.    A constructive trust will be imposed only in limited circumstances. Legal title must have been obtained by means of fraud, commission of wrong or by any form of unconscionable conduct and must be held by someone who in equity should not be entitled to it. *See Wilharms v. Wilharms,* 93 Wis. 2d 671, 678–79, 287 N.W.2d 779 (1980).[6] It is not necessary that the person against whom the constructive trust is to be imposed be the wrongdoer or know of wrongdoing initially. If other elements for imposing a constructive trust have been satisfied and the holder of legal title is not a bona fide purchaser, a constructive trust may be imposed. *See id.*

¶ 16.    A constructive trust imposed on wrongfully obtained property follows the property or its proceeds.

> If one person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of lands, taking the title in his own name, . . . equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosesoever hands it may come, except into those of a bona fide purchaser for value and without notice; and the court will enforce the constructive trust for the benefit of the beneficial owner or original cestui que trust who has thus been defrauded. . . . Wher-

---

[6] Some Wisconsin cases hold that a finding of wrongdoing is essential to impose a constructive trust. *See First Nat'l Bank v. Nennig,* 92 Wis. 2d 518, 539–40, 285 N.W.2d 614 (1979); *Krueger v. Rodenberg,* 190 Wis. 2d 367, 377, 527 N.W.2d 381 (Ct. App. 1994). This view is not universally accepted. *See In re Massouras' Estate,* 16 Wis. 2d 304, 313, 114 N.W.2d 449 (1962); 1 DAN B. DOBBS, LAW OF REMEDIES § 4.3(1), at 587–88 (2d ed. 1993). We need not resolve the conflict because here the Town based its claim of a constructive trust on wrongdoing.

ever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds.

*Warsco*, 190 Wis. at 90; *see also Truelsch v. Northwestern Mut. Life Ins. Co.*, 186 Wis. 239, 202 N.W. 352 (1925).[7]

¶ 17.  An interest in land comprehends "every kind of claim to land which can form the basis of a property right." *Weber v. Sunset Ridge*, 269 Wis. 120, 126, 68 N.W.2d 706 (1955) (citations omitted). An action seeking the imposition of a constructive trust may ultimately change legal title. *See* DOBBS, *supra,* at 587–88. It follows, therefore, that a claim for the imposition of a constructive trust on real estate is an action seeking relief that "might confirm or change interests in the real property," as that term is used in WIS. STAT. § 840.10.

¶ 18.  In a case parallel to ours, the Superior Court of New Jersey, Appellate Division, reached similar results. In *Polk v. Schwartz*, 399 A.2d 1001 (N.J. Super. 1979), the owners of a nursing home facility recorded a lis pendens in connection with a suit seeking a constructive trust to be imposed on properties the

---

[7] In *Truelsch v. Northwestern Mut. Life Ins. Co.*, 186 Wis. 239, 252, 202 N.W. 352 (1925):

It would be a signal failure of justice if one who has become a constructive trustee by reason of wrongfully receiving or securing the property of another could escape the consequences of his acts by changing the form of the property thus acquired. Hence, as between him and the *cestui que trust*, the latter may pursue the funds into the new investment and charge that investment with the trust. He may also assert and enforce the same right against third parties to whom the property has been transferred with knowledge of the trust or who have paid no consideration for it, provided the identity of the trust fund can be established.

defendants acquired in Atlantic City. The suit alleged that the defendants conspired to deplete the nursing home facility of funds by a variety of methods, including drawing excessive salaries and converting $180,000 of patients' personal Medicaid funds. *See id.* at 1003. The suit alleged that the defendants used the wrongfully obtained funds to acquire residences and businesses in Atlantic City. *See id.* at 1003–04.

¶ 19.   In holding that the trial court erroneously discharged the lis pendens, the New Jersey court explained:

> It is evident that the trial judge's concept in this case was that plaintiff's cause of action was essentially, if not exclusively, for the recovery of money damages. But this would not be so if the . . . complaint sets forth a sufficient cause of action for the imposition of a constructive trust. In this regard it is to be noted that a claim for money damages does not necessarily preclude the assertion of a claim for alternate or additional equitable relief. . . .
>
> There is no doubt that an action to impress a constructive trust on realty affects title to that property, so that a notice of Lis pendens may be filed under a statute such as ours.

*Id.* at 1004.

¶ 20.   The *Polk* case is instructive because it focuses on the trial court's duty to review only the pleadings to determine whether they state a claim that might conform or change an interest in real estate. *See id.* The merits of the litigation or whether the plaintiff will ultimately prevail are not relevant on a motion to discharge a lis pendens. *See id.* at 1005. "It has been held that the propriety of a Lis [P]endens must stand

on the allegations in the pleadings." *Id.* at 1004. The court must consider only whether the complaint states a cause of action to impose a trust and, for that purpose, the complaint's allegations are taken as true. *See id.* at 1004–05.[8]

¶ 21. Consistent with our obligation under summary judgment procedure to review the pleadings de novo, we are satisfied that the Town's Illinois action stated a claim to impose a constructive trust on the golf course.[9] That the suit for the constructive trust was filed in Illinois and not Wisconsin is of no consequence. A "court outside this state having personal jurisdiction

[8] *See also* 54 C.J.S. *Lis Pendens* § 28, at 411 (1987) ("[T]he propriety of filing the notice [of lis pendens] will be determined from the pleadings alone."). Unless the complaint clearly recites a cause of action which, under the statute, does not permit the filing of a notice of lis pendens (e. g., an action to recover judgment for money or damages only), it is not appropriate for a defendant to move directly to discharge the notice. *See Polk v. Schwartz*, 399 A.2d 1001, 1005 (N.J. Super. 1979). Rather, a defendant should move "either to dismiss the complaint or pertinent counts thereof for failure to state a claim upon which relief can be granted or for summary judgment, which motion would [include] a request to discharge the notice of Lis [P]endens." *Id.*

[9] Count X of the Illinois complaint includes allegations that Specialty Risk and Specialty claims received more than $3,000,000 in overpayments and Plaza Partners and its general partners received at least $1,400,000, which in equity and good conscience belongs to the Town. It further alleges:

On information and belief, Plaza Partners spent the money it received from Cicero on the Golf course as part of the scheme devised and furthered by members of the Specialty Group, the Individual Defendants [including Specialty Risk Consultants, Inc.,] to defraud Cicero. Cicero is entitled to the imposition of a constructive trust on the Golf course or the proceeds thereof.

of a party may order that party to execute a conveyance of real property located in Wisconsin." *Belleville State Bank*, 117 Wis. 2d at 577. To be consistent with *Belleville*, we must conclude WIS. STAT. § 840.10 permits a lis pendens to be recorded in connection with an out-of-state suit seeking title or possession of property in Wisconsin by means of a constructive trust. Therefore, we conclude that the circuit court should not have discharged the Town's lis pendens.

¶ 22.   We agree with concerns that the application of lis pendens must be strictly limited to actions directly seeking to obtain title to or possession of specific real property. *See S. Utsunomiya Enters. v. Moomuku Country Club*, 866 P.2d 951, 966 (Haw. 1994).[10] As one California court pointed out, "[t]he potential for abuse is obvious." *BGJ Assocs. v. Superior Court*, 75 Cal.App.4th 952, 969, 89 Cal.Rptr.2d 693, 704 (Cal. App. 1999).[11] Once a lis pendens is filed, it clouds the title and effectively prevents the property's transfer until the litigation is resolved or the lis pendens is discharged. *See id.* at 967, 89 Cal.Rptr.2d at 702. Therefore, "this ruling must not be interpreted by creditors as a green light to tie up real property by filing baseless or questionable fraudulent transfer com-

---

The complaint sought relief in the form of damages and the imposition of a constructive trust. A claim for money damages does not preclude alternate or additional equitable relief. *See Briggson v. Viroqua*, 264 Wis. 47, 54–57, 58 N.W.2d 546 (1953).

[10] *See also Backman v. Packwood Inds.*, 489 S.E.2d 135, 136–37 (Ga. App. 1997).

[11] For this reason, California courts have approached this issue with mixed results. *See BGJ Assocs. v. Superior Court*, 75 Cal.App.4th 952, 969, 89 Cal.Rptr.2d 693, 704 (Cal. App. 1999), and cases cited therein.

plaints, recording notices of lis pendens, and waging prolonged battles over expungement." *Hunting World, Inc. v. Superior Court*, 22 Cal.App.4th 67, 74, 26 Cal.Rptr.2d 923, 928 (Cal. App. 1994).

¶ 23.  Here, the facts distinguish the Illinois suit from one seeking a constructive trust remedy solely as "collateral" for money damages. *See BGJ Assocs.*, 75 Cal.App.4th at 966–67, 89 Cal.Rptr.2d at 702. This is an important distinction. In Wisconsin, in addition to criminal penalties, there is a cause of action for slander of title if a false, sham, or frivolous lis pendens is filed. *See* WIS. STAT. §§ 706.13 and 943.60; *see also State v. Minniecheske*, 118 Wis. 2d 357, 359, 347 N.W.2d 610 (Ct. App. 1984).

¶ 24.  Centrum and Marano also contend that the trial court properly discharged the lis pendens because the Town failed to file proof of service of the Illinois summons or complaint. We reject this argument. First, it does not appear that it was raised at the circuit court and it is not accompanied by record citation. Therefore it need not be considered. *See Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990). In any event, it rests on a misinterpretation of WIS. STAT. § 840.10(1)(a). It erroneously implies that the Town was required to serve Centrum and Marano with the Illinois summons and complaint and to file the proof of service in the Wisconsin mortgage foreclosure suit. All that is required under § 840.10(1)(a) is that the Town properly serve the Illinois defendants and timely file proof of service in the Illinois action.

¶ 25.  Centrum and Marano also fault the Town for failing to file a lawsuit, counterclaim or cross-claim in Wisconsin seeking a constructive trust. They cite no legal authority supporting their argument that the Town could not pursue its claim for relief in the Illinois

action and, therefore, we do not consider it further. *See State v. Flynn*, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994).

## PARTIES AND STANDING

¶ 26. The Town argues that the court should not have dismissed it as a party defendant. We agree. WISCONSIN STAT. § 803.03 provides for the joinder of persons needed for just and complete adjudication. It states in part:

> **(1)** PERSONS TO BE JOINED IF FEASIBLE. A person who is subject to service of process shall be joined as a party in the action if:
>
> . . . .
>
> (b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> 1. As a practical matter impair or impede the person's ability to protect that interest; or
>
> 2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

*Id.*

¶ 27. We conclude that because the Town was served with a summons and complaint and the Town's answer, affidavits and supporting documents demonstrate that it claimed an interest in the golf course, it should not have been dismissed as a party. The disposition of the mortgage foreclosure in its absence would, as a practical matter, impede the Town's ability to protect that interest. As a result, the Town should have

40

remained as an interested party to the foreclosure action.

¶ 28.   We observe that dismissing the Town as a party would have left it with the same rights it would have had at the commencement of the foreclosure proceeding. *See Wisconsin Fin. Corp. v. Garlock*, 140 Wis. 2d 506, 513, 410 N.W.2d 649 (Ct. App. 1987). Therefore, the judgment of foreclosure would not have foreclosed its alleged interest in the mortgaged property.

¶ 29.   We further conclude that the Town has standing. " 'Standing' is usually a matter of judicial policy." *Wisconsin Hosp. Ass'n v. Natural Resources Bd.*, 156 Wis. 2d 688, 700, 457 N.W.2d 879 (Ct. App. 1990). Whether a plaintiff has standing is a question of law that we decide independently of the trial court's views. *See id.* The question is whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *State ex rel. First Nat'l Bank v. M & I Peoples Bank*, 95 Wis. 2d 303, 307–08, 290 N.W.2d 321 (1980).

¶ 30.   The Town's answer, affirmative defenses and responses to the summary judgment motion demonstrate its claim that the golf course, in good conscience belongs to the Town, "subject to a constructive trust," and Plaza Partners and Specialty risk were the "constructive trustee[s]." *See* DOBBS, *supra,* at 587–88. The Town essentially sought a judgment ordering transfer of title to it as, in the eyes of equity, "the true 'owner.' " *Id.* We are satisfied that the Town demonstrated a sufficient stake in the mortgage proceedings to support standing.

41

## SUMMARY JUDGMENT OF FORECLOSURE

¶ 31.   Finally, the Town contends that the court, without considering the Town's opposition, entered summary judgment in favor of Centrum and Marano. It argues that it raised material issues of fact concerning the validity of the mortgage documents, consideration therefor, and the amounts allegedly due. Centrum and Marano respond to the effect that the Town waived this issue because it filed no affirmative defense or cross-claim.

¶ 32.   The record fails to support this argument. The Town filed an answer denying material allegations of the complaint and containing its affirmative defense. It also filed affidavits and supporting documents opposing the summary judgment motions. Centrum and Marano fail to provide legal authority to support their proposition that a mortgage foreclosure cannot be defended by filing an answer and affirmative defenses. *See State v. Shaffer,* 96 Wis. 2d 531, 545–46, 292 N.W.2d 370 (Ct. App. 1980). Accordingly, we reject their waiver argument.

¶ 33.   Marano also contends that summary judgment was properly entered based solely on the pleadings because in its answer to Marano's cross-claim, the Town neglected to deny Marano's allegation that its rights were superior to all other parties in the action. We disagree. In its answer to the cross-claim, the Town disputed the allegation of default and the amounts due. Because material issues of fact were dis-

puted, summary judgment could not have been entered based solely on the pleadings.[12]

¶ 34.   Marano and Centrum raise a number of arguments that summary judgment was properly entered in its favor. The circuit court, however, did not consider the Town's defenses to the complaint and the summary judgment motion because it dismissed the Town as a party. Because the Town was denied an opportunity to present its defenses, we reverse the foreclosure judgment and remand this matter to the trial court to determine whether material issues of fact preclude summary judgment of foreclosure.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[12] Also, Marano concedes in its appellate brief that "The Town of Cicero did provide a scintilla of legally sufficient evidence that Marano was involved in a fraudulent scheme or that they did not provide the sums of money they sought to recover."