ANNETTE KINGSLAND ZIEGLER, J. (concurring).
*522 ¶45 I join the majority but concur and write separately to further clarify the issue we were called upon to decide, which is, whether a constructive trust is an independent cause of action. Because it is not and instead is a remedy, Terry Stevens ("Stevens") must be dismissed from this action. Stated differently, it is undisputed that Steven Tikalsky ("Tikalsky") alleged only two causes of action against Stevens: (1) unjust enrichment and (2) constructive trust. As the unjust enrichment claim was dismissed, we are left to decide whether a constructive trust is a stand-alone cause of action or instead, a remedy. Because it is a remedy, Stevens was properly dismissed. If this case were not now dismissed as to Stevens, she would remain solely to satisfy a remedy awarded if alleged wrongdoing of others is proven. To the extent constructive trusts have been imposed, they are a potential remedy once a viable cause of action has been proven against that defendant. Here, no viable cause of action remains against Stevens. Constructive trust is not a stand-alone cause of action. As a result, Stevens was properly dismissed from the action. See, e.g., Sulzer v. Diedrich, 2003 WI 90, ¶¶26-30, 263 Wis. 2d 496, 664 N.W.2d 641 ;
*798 Wilharms v. Wilharms, 93 Wis. 2d 671, 679-81, 287 N.W.2d 779 (1980) ; Richards v. Richards, 58 Wis. 2d 290, 296-99, 206 N.W.2d 134 (1973) ; Schmalz v. McKenna, 58 Wis. 2d 220, 231, 206 N.W.2d 141 (1973) ; Connecticut General Life Ins. Co. v. Merkel, 90 Wis. 2d 126, 132-34, 279 N.W.2d 715 (Ct. App. 1979) (all cases of constructive trust with underlying causes of action being unjust enrichment).
¶46 I write to further explain why here, Stevens does not properly remain in this case because no viable legal theory of liability has been alleged against her. Although Tikalsky's arguments have morphed somewhat, Tikalsky makes no argument that any otherwise unstated cause of action, such as conversion, has been alleged against Stevens.[1] Instead, he urges that the complaint be viewed to support "an equitable claim for imposition of a constructive trust" despite no allegation made against the innocent property holder. Tikalsky argues, "once the elements of a constructive trust are established, the equitable claim can proceed." I would clarify that absent a viable cause of action-which could be the violation of a court order or contract which resulted in wrongful distribution to an innocent beneficiary-there can be no consequent remedy of constructive trust against Stevens. Here, no such violation of court order or contract has been alleged. Tikalsky's argument instead rises and falls with variations of the same theme: whether a constructive trust is a viable, stand-alone cause of action. Specifically, he *799 argues that he has stated a viable cause of action by pleading the elements of constructive trust, that a claim for "restitution" alone is viable, and because "the equitable claim or cause of action might be labeled 'unjust enrichment' based upon third party wrongdoing." Here, seeking this constructive trust remedy, absent an underlying cause of action, is legally insufficient.[2] *523 ¶47 The majority correctly concludes that a constructive trust is a remedy, not a cause of action. Additionally, the majority correctly concludes that Tikalsky could not seek a constructive trust without a viable underlying cause of action against Stevens. Because no viable cause of action remains against her, the remedy of a constructive trust cannot independently exist as a stand-alone claim. In other words, Tikalsky is precluded from asserting the right to this remedy absent an underlying cause of action that would give rise to a constructive trust. While the majority is correct in its conclusions, I write to further emphasize the majority's conclusions. There is a fundamental difference between an underlying cause of action-here, unjust enrichment-and the potential remedy of a constructive trust.
¶48 I begin with the general distinction between a cause of action and a remedy. The majority correctly states that causes of action and remedies are distinct legal concepts, and must be understood and applied as such. "[A] cause of action owes its existence to a set of operative facts."
*800 Wussow v. Commercial Mechanisms, Inc., 97 Wis. 2d 136, 145, 293 N.W.2d 897 (1980) ; see also Caygill v. Ipsen, 27 Wis. 2d 578, 582, 135 N.W.2d 284 (1965) ("The operative facts, not the consequences, are determinative of a cause of action."). A remedy is a consequence that flows from a successful cause of action. Goetz v. State Farm Mut. Auto Ins. Co., 31 Wis. 2d 267, 273-74, 142 N.W.2d 804 (1966) ; see also Franklin v. Gwinnett Cty. Pub. Schs., 503 U.S. 60, 73-74, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (discussing the difference between a cause of action and a remedy, and stating that "[f]ederal courts cannot reach out to award remedies when the Constitution or laws of the United States do not support a cause of action"). A viable cause of action is thus a necessary precedent, separate and distinct from a potential remedy, but required in order to give rise to the potential relief prayed for in the complaint. A cause of action owes its existence to a set of operative facts and legal conclusions that if proven require consideration of whether a remedy should be awarded. Contrary to the court of appeals' conclusion, such a distinction is not "largely immaterial." Rather, the distinction between a cause of action and a remedy is essential.
¶49 Since a constructive trust is a remedy and not a stand-alone cause of action, I will briefly discuss unjust enrichment as a cause of action. Unjust enrichment is a stand-alone cause of action. See, e.g., Sands v. Menard, 2017 WI 110, ¶¶29-30, 379 Wis. 2d 1, 904 N.W.2d 789 (referring to "claims based upon unjust enrichment" and referring to "action[s] for recovery based upon unjust enrichment"); Admiral Ins. Co. v. Paper Converting Machine Co., 2012 WI 30, ¶¶49-50, 339 Wis. 2d 291, 811 N.W.2d 351 (describing unjust enrichment as a theory of recovery and as a claim); Watts v. Watts, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987) (stating that unjust enrichment is a "theory of recovery" and describing it as a stand-alone cause of *801 action); Lawlis v. Thompson, 137 Wis. 2d 490, 496, 405 N.W.2d 317 (1987) (describing unjust enrichment as "a well-recognized and long-accepted theory in Wisconsin jurisprudence," and referring to it as "a cause of action"); Puttkammer v. Minth, 83 Wis. 2d 686, 688-89, 266 N.W.2d 361 (1978) (referring to unjust enrichment as a "cause of action" and considering whether the plaintiff stated a claim for relief for unjust enrichment).
¶50 "[A]n action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a *524 benefit has a duty to make restitution where retaining such a benefit would be unjust." Watts, 137 Wis. 2d at 530, 405 N.W.2d 303 (citing Puttkammer, 83 Wis. 2d at 689, 266 N.W.2d 361 ). In a cause of action for unjust enrichment, "the focus is on the benefit received by one party from the other party which would be inequitable to retain." Sands, 379 Wis. 2d 1, ¶41, 904 N.W.2d 789 (citing Boldt v. State, 101 Wis. 2d 566, 573, 305 N.W.2d 133 (1981) ). To succeed on an unjust enrichment claim and thus be entitled to restitution, a plaintiff must show "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." See Sands, 379 Wis. 2d 1, ¶30, 904 N.W.2d 789 (citing Watts, 137 Wis. 2d at 531, 405 N.W.2d 303 ); see also Wis. JI-Civil 3028 (2016).
¶51 While unjust enrichment is undoubtedly a cause of action, a constructive trust is but one method of providing restitution to a party who succeeds on an unjust enrichment claim and it has its own elements. Although Wisconsin courts have not always been precise and uniform when describing a constructive trust, today we clarify that that a constructive trust is a *802 remedy and not an independent cause of action. We decline to extend here the doctrine of unjust enrichment under a third-party beneficiary theory so to create a constructive trust as a remedy for Tikalsky when no viable cause of action has been pled.
¶52 "A constructive trust is an equitable device used to prevent unjust enrichment which arises when a party receives a benefit the retention of which is unjust to another party." Sulzer, 263 Wis. 2d 496, ¶20, 664 N.W.2d 641 (citing Wilharms, 93 Wis. 2d at 678-79, 287 N.W.2d 779 ). Put differently, where unjust enrichment occurs, a constructive trust may be imposed as a remedy to ensure that an unjustly received benefit goes to the proper party. However, a constructive trust is not always the automatic remedy when unjust enrichment has been proven. This court has stated that the conditions precedent for such a constructive trust to be imposed are "(1) unjust enrichment and (2) abuse of a confidential relationship or some other form of unconscionable conduct." Watts, 137 Wis. 2d at 533-34, 405 N.W.2d 303. Thus, a constructive trust might or might not be the proper remedy even when unjust enrichment is proven.
¶53 This court has stated that circuit courts may impose a constructive trust in cases of " 'actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct,' " and only where "the one against whom the trust is imposed 'has either obtained or holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy.' " Gorski v. Gorski, 82 Wis. 2d 248, 254-55, 262 N.W.2d 120 (1978) (quoting Bautista v. Schneider, 16 Wis. 2d 304, 312, 114 N.W.2d 449 (1962) ). Thus, as our jurisprudence reflects, no stand-alone cause of action exists for a constructive trust, and a constructive trust remedy *803 will not be imposed absent successful prosecution of a viable cause of action and then the elements of constructive trust must be proven. In this case, the relationship between unjust enrichment and a constructive trust is that of a cause of action and a remedy, not that of two independent causes of action.
¶54 As a practical matter, consider for example, how a defense might ever be mounted to a request for a constructive trust if no cause of action exists to defend against. If a constructive trust were to be considered a stand-alone cause of action, *525 an asset-holder would be left with no defense or role other than to possibly assist in the defense of those against whom a claim has been made. The asset-holder's property would be held hostage, subject to the will and decisions of those who are able to mount a defense, despite the fact that plaintiff asserts no claim or wrongdoing against the asset-holder. It is most incongruous that one be a party to litigation simply because a plaintiff would prefer to, if successful, collect one person's property by a constructive trust rather than that of the parties for which liability is alleged.[3] As highlighted by *804 the majority, nearly 40 jurisdictions have rejected such a proposition, holding that a constructive trust is a *805 remedy and not a cause of action. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci, 393 Ill.Dec. 495, 34 N.E.3d 1023, 1045 (Ill. App. Ct. 2015) ("We first note that a constructive trust is a remedy, not a cause of action."); Keeling v. Keeling, 145 So. 3d 763, 769 (Ala. Civ. App. 2014) ("[A] *526 constructive trust is an equitable remedy; and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing."); Sterenbuch v. Goss, 266 P.3d 428, 437 (Colo. App. 2011) (citation omitted) ("[A] constructive trust, being a remedy to prevent unjust enrichment, is not to be pled as a separate cause of action ....").
¶55 By way of analogy, the remedy of a constructive trust operates similar to the remedy of punitive damages. The remedy of punitive damages does not independently exist as a claim and in fact, is not provided for unless compensatory damages are first awarded. Wisconsin law is clear that a party may not be awarded punitive damages without a viable underlying cause of action and a compensatory award. See Groshek v. Trewin, 2010 WI 51, ¶30, 325 Wis. 2d 250, 784 N.W.2d 163 ; Tucker v. Marcus, 142 Wis. 2d 425, 440-41, 418 N.W.2d 818 (1988) ; Hanson v. Valdivia, 51 Wis. 2d 466, 474, 187 N.W.2d 151 (1971). Wisconsin Stat. § 895.043 allows punitive damages only where "evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." § 895.043(3).
*806 ¶56 To seek either a constructive trust or punitive damages, a party must first succeed on an underlying cause of action. If the party does not succeed on an underlying cause of action, then it is not entitled to any relief, and neither punitive damages nor a constructive trust may be sought. Simply stated, neither are stand-alone causes of action.[4]
¶57 Turning to the case at hand, the majority correctly concludes that the complaint fails to state a claim against Stevens because the only remaining claim against her-here, unjust enrichment-was dismissed. Since no claim exists against Stevens, the imposition of a remedy, a constructive trust, is not allowable under the law. Tikalsky does not argue that the complaint otherwise states an alternative cause of action not specifically pled. As a result, a constructive trust cannot be imposed with respect to Stevens. Therefore, the court of appeals was incorrect to conclude *807 that a constructive trust could be sought against Stevens without the existence of a viable cause of action against her.
¶58 While I join the majority, I write separately to highlight the distinction between a cause of action-here, unjust enrichment-and the remedy sought-here, a constructive trust.
¶59 For the foregoing reasons, I respectfully concur.
PATIENCE DRAKE ROGGENSACK, C.J. (dissenting).
¶60 The question presented is whether Terry Stevens (Terry), one of four children *527 of Donald and Betty Lou Tikalsky, is properly joined in this action to recover property from her that she received from her parents through what is alleged to be tortious conduct by Susan Friedman (Susan) and James Tikalsky (James), two other children of Donald and Betty Lou. Because I conclude that J. Steven Tikalsky (Steven) has made a sufficient claim against Terry, which if proved would warrant the imposition of a constructive trust on some of the property she received from the estate of Donald and Betty Lou, for which claim Terry did not make an evidentiary, prima facie case for dismissal, and for which Steven provided sufficient evidentiary support to create material issues of fact, I would affirm the court of appeals' reversal of the circuit court's summary judgment, and I respectfully dissent from the majority opinion.
I. BACKGROUND[1]
¶61 The majority opinion ably sets forth the circumstances from which Steven's claims arise; therefore, *808 I will relate here only what is necessary for the reader to understand the following discussion. In 1999, Donald and Betty Lou's estate planning documents divided their property equally among their four children. In 2007, Donald and Betty Lou revised those documents specifically to exclude Steven and Steven's children from any inheritance. Although some of the estate planning documents were revised in 2008 and 2009, they continued to exclude Steven and his children from any inheritance from Donald and Betty Lou.
¶62 Donald died in 2009, five months after he and Betty Lou made the final revision to their estate plan. It is the difference in Steven's inheritance in Donald and Betty Lou's 1999 estate plan and the estate plan finalized in 2009 that Steven alleges was caused by Susan's and James' tortious influence of his parents' decision making.
¶63 Betty Lou died in 2014, and in 2015, Steven filed the action now before us. Steven alleged, among other claims, that Susan and James intentionally exerted undue influence over Donald and Betty Lou and interfered with his expected inheritance by arranging the preparation and execution of his parents' wills and the changes to their trust documents that excluded Steven and his children. The complaint also alleged a claim for unjust enrichment against Terry.[2]
*809 Steven voluntarily dismissed that claim, so it is not before us. However, dismissal of the unjust enrichment claim did not dismiss the factual allegations that preceded or followed that label as they were incorporated by reference into subsequent portions of the complaint.
¶64 Furthermore, the allegations in the complaint incorporate Terry as participating in rewards from Susan's and James' allegedly tortious conduct. For example, the complaint alleges that "[b]ut not for Susan and James' conduct described above, Donald and Betty Lou would have left a legacy to Steven equal to that of the legacy left to each of their other three *528 issue."[3] The complaint goes on to state that "Susan and James' false and fraudulent representations and conduct described above resulted in a benefit being conferred upon Susan, James and Terry by making them each one-third beneficiaries of Donald and Betty Lou's joint estate plan rather than one-fourth beneficiaries along with Steven."[4] The complaint alleges that Terry was aware of Susan's and James' conduct and that she benefitted from it. For example, the complaint states, "Susan, James and Terry had knowledge of and appreciation of the benefit;"[5] and "Susan, James and Terry accepted and retained the benefit under circumstances that make it inequitable for them to retain the benefit."[6]
¶65 The complaint also alleges that by retaining a one-third interest in her parents' estate, Terry was a participant along with Susan and James in converting property to their own use that Steven claims should have been his. The complaint alleges that "[t]he funds *810 that constituted a one-quarter share in Donald and Betty Lou's joint estate plan and were converted[7 ] from Steven to the defendants were at all times after the conversion held by the defendants in constructive trust for Steven."[8]
¶66 Steven prayed for relief that included a declaration that all estate planning documents executed in 2009 are invalid; that assets of his parents' estate be returned, except for payment of debt, taxes and administrative expenses; that trust property be returned pursuant to Wis. Stat. § 701.0604 (2017-18);[9] and a judgment issued against Susan, James and Terry in an amount to be determined at trial that is sufficient to award him a one-quarter interest in his parents' estate.
¶67 The circuit court granted summary judgment on Steven's claim of undue influence[10] and his request for a constructive trust. The circuit court also dismissed Terry from the lawsuit, with prejudice. The court of appeals reversed, concluding that Steven had *811 made sufficient allegations, which had not been set aside by Terry, to permit the remedy of constructive trust to be applied against property held by Susan, James and Terry if Steven prevailed at trial.[11]
II. DISCUSSION
¶68 The majority opinion gets mired down in deciding whether constructive trust is a claim or a remedy. It concludes *529 that constructive trust is a remedy, a conclusion with which I agree. However, that determination is not the question on which the outcome of Steven's allegations against Terry turns. Rather, a constructive trust is an appropriate remedy if Susan, James and Terry have converted property obtained from their parents' estate that would have been devised to Steven but for wrongful influence over Donald and Betty Lou.
A. Standard of Review
¶69 Steven seeks the equitable remedy of a constructive trust. Whether to impose a constructive trust is a two-step process. Sulzer v. Diedrich, 2003 WI 90, ¶16, 263 Wis. 2d 496, 664 N.W.2d 641. In the first step, we independently review whether a constructive trust could be imposed on property of the defendants. Id.
¶70 We also independently review the court of appeals' reversal of the circuit court's summary judgment dismissing Terry, while benefitting from discussions of the court of appeals and the circuit court. Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶15, 291 Wis. 2d 283, 717 N.W.2d 17.
*812 B. Constructive Trust
¶71 A constructive trust could be imposed if Steven proves that the wrongful influences of Susan and James caused the division of his parents' estate into three, rather than four shares and that Susan, James and Terry each received property that they converted to their own use that in equity should have been devised to him. Wilharms v. Wilharms, 93 Wis. 2d 671, 678-79, 287 N.W.2d 779 (1980).
¶72 A constructive trust is an equitable remedy that a court may impose to prevent the retention of property that was obtained by fraud or by the abuse of a confidential relationship. Ross v. Specialty Risk Consultants, Inc., 2000 WI App 258, ¶13, 240 Wis. 2d 23, 621 N.W.2d 669. "In the constructive trust case, the defendant has legal rights in something that in good conscience belongs to the plaintiff." Id., ¶14 (citing 1 Dan B. Dobbs, Law of Remedies § 4.3(1), at 587-88 (2d ed. 1993)). "It is not necessary that the person against whom the constructive trust is to be imposed be the wrongdoer or know of wrongdoing initially." Ross, 240 Wis. 2d 23, ¶15, 621 N.W.2d 669. Rather, a constructive trust will in equity follow the property or the proceeds from the property that was obtained by wrongful means. Id., ¶16.
¶73 The complaint alleges that "[t]he funds that constituted a one-quarter share in Donald and Betty Lou's joint estate plan and were converted from Steven to the defendants were at all times after the conversion held by the defendants in constructive trust for Steven."[12] "[A] complaint states a claim in conversion when it alleges that the plaintiff is 'entitled to immediate possession' of a 'chattel' over which the *813 defendant had wrongfully retained dominion or control." Methodist Manor of Waukesha, Inc. v. Martin, 2002 WI App 130, ¶7, 255 Wis. 2d 707, 647 N.W.2d 409. "An action for conversion is bottomed upon a tortious interference with possessory rights." Id.
¶74 Steven alleges that the wrongful conduct of Susan and James resulted in invalid estate planning documents for Donald and Betty Lou, thereby permitting Susan, James and Terry to convert to their own use property, which absent Susan's and James' wrongful conduct, would have been his. If Steven prevails at trial, a constructive trust is an appropriate remedy to impose on property that Terry possessed and converted to her own use, just as it is for property Susan and James *530 possessed and converted. Furthermore, even though imposing a constructive trust on property held by an innocent recipient may require "[a]dditional factors," abuse of a confidential relationship is such a factor. Prince v. Bryant, 87 Wis. 2d 662, 667, 275 N.W.2d 676 (1979). Steven alleges abuse of parent-child relationships, certainly they are confidential relationships.
C. Summary Judgment
¶75 Terry was granted summary judgment of dismissal, with prejudice, which the court of appeals reversed. When reviewing summary judgment, Wis. Stat. § 802.08(2) is our guide. We apply the same methodology as the circuit court and court of appeals. Linden v. Cascade Stone Co., Inc., 2005 WI 113, ¶5, 283 Wis. 2d 606, 699 N.W.2d 189. We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. Ande v. Rock, 2002 WI App 136, ¶8, 256 Wis. 2d 365, 647 N.W.2d 265.
*814 The label of a claim is not determinative; it is the factual allegations that drive whether the complaint states a claim for relief. Strid v. Converse, 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983). If the complaint and answer join issue, we examine the moving party's evidentiary submissions to determine whether they establish a prima facie case for summary judgment on some or all of the issues joined by answer. Ande, 256 Wis. 2d 365, ¶8, 647 N.W.2d 265. If they do, we consider the evidentiary submissions in opposition to summary judgment to determine whether there are issues of material fact that require a trial. Hoida, 291 Wis. 2d 283, ¶15, 717 N.W.2d 17. Summary judgment is appropriate only when there are no issues of material fact. Linden, 283 Wis. 2d 606, ¶5, 699 N.W.2d 189.
¶76 In the matter before us, the allegations in the complaint state a claim for wrongful possession and conversion of property by Terry on which relief can be granted, and the answers join issues of fact and of law. Methodist Manor, 255 Wis. 2d 707, ¶7, 647 N.W.2d 409. I do not discuss all the claims because only Terry has been dismissed from the lawsuit.
¶77 Steven's claims against Terry are that she obtained possession of property from Donald and Betty Lou, some of which should have belonged to him, and thereby benefitted from the tortious acts of Susan and James. Stated otherwise, Steven claims Terry converted property to her own use that should have been devised to him. Although Steven's allegations could have been more particularized, they give fair notice of the gravamen of his claims against Terry. As we have explained in regard to wrongful conversion, "[t]he gravamen of the action is the wrongful conversion, to which the possession is matter of inducement. The action does not rest upon the fraudulent nature of the possession, but upon the subsequent tortious conversion."
*815 Kalckhoff v. Zoehrlaut, 40 Wis. 427, 430-31 (1876). Therefore, if one is in possession of property which in equity should belong to another and the possessor puts that property to his or her own use, the possessor has converted property of another. Id.
¶78 Although Terry's answer denies the factual allegations and legal claims made in Steven's complaint, she makes no evidentiary offer of proof by affidavit or otherwise sufficient to show a prima facie case for summary judgment dismissing Steven's claim against her for possession and subsequent conversion of property that should have belonged to him.[13] Therefore, she has made no evidentiary showing that if Steven is able to prove the factual allegations *531 in his complaint, that a constructive trust is not an equitable remedy that should attach to some of the property she received from Donald and Betty Lou. Wilharms, 93 Wis. 2d at 678-79, 287 N.W.2d 779.
¶79 One also could argue that Terry is an indispensable party to this action pursuant to Wis. Stat. § 803.03(1)(b).[14] To explain further, Terry was dismissed with prejudice. Therefore, if that judgment *816 stands and Steven prevails at trial, the court may be without power to affect the property Terry received from her parents; and therefore, Susan's and James' property will be subject to recovery for the full amount of Steven's one-third share, while Terry's property will not be affected by the final judgment on Steven's claims.[15] No party has raised § 803.03(1)(b)2. so I go no further with it except to note its interest.
¶80 The majority opinion errs because it does not complete the requisite analysis for summary judgment, and in so doing repeats the error of the circuit court. For example, the majority opinion relies on a circuit court's finding of fact that "the defendants had nothing to do with the 'orchestration and preparation' of the Tikalskys' estate planning documents."[16] That factual determination was erroneously made on a motion for summary judgment. Summary judgment is appropriate only when there are no disputes of material fact. Linden, 283 Wis. 2d 606, ¶5, 699 N.W.2d 189. All one has to do is review the record to learn that Steven had a story to tell that is the opposite of what his sisters and brother told. See Affidavit of J. Steven Tikalsky (R. 47);[17] Affidavit of John R. Pankraz (R 40);[18] Affidavit of *817 E. John Raasch (R. 39).[19] Summary judgment is not a trial by affidavit, but that is what occurred at the circuit court.
¶81 The court of appeals correctly overturned the circuit court's summary judgment dismissing Terry from this lawsuit. Steven's allegations are sufficient to give *532 fair notice of his claims against Terry and any evidentiary showing that supports her position is controverted by the evidentiary showing Steven made. Terry should proceed to trial along with Susan and James.
III. CONCLUSION
¶82 Because I conclude that Steven has made a sufficient claim against Terry, which if proved would warrant the imposition of a constructive trust on some of the property she received from the estate of Donald and Betty Lou, for which claim Terry did not make an evidentiary prima facie case for dismissal, and for which Steven provided sufficient evidentiary support to create material issues of fact, I would affirm the court of appeals' reversal of the circuit court's summary judgment, and I respectfully dissent from the majority opinion.

As the majority opinion does, I refer to the members of the Tikalsky family by their first names for the sake of clarity. See majority op., ¶2.

For example, Chief Justice Roggensack's dissent indicates that Steven has claims against Terry that remain. Specifically, the dissent states, "Steven claims Terry converted property to her own use that should have been devised to him. Although Steven's allegations could have been more particularized, they give fair notice of the gravamen of his claims against Terry." Chief Justice Roggensack's dissent, ¶77; see also id., ¶76 ("In the matter before us, the allegations in the complaint states a claim for wrongful possession and conversion of property by Terry ...."). Contrary to this assertion, no causes of action against Terry remain. What remains is the request for a constructive trust on Terry's property-not a claim against Terry as a party.
Similarly, the majority tethers the imposition of a constructive trust over property in Terry's possession to the existence of a cause of action against Terry herself. See majority op., ¶¶39-40. Such a connection is not required by our case law. See Wilharms v. Wilharms, 93 Wis. 2d 671, 679, 287 N.W.2d 779 (1980) ("It is not necessary that the person against whom the constructive trust is to be imposed be a wrongdoer or know of the wrongdoing initially. If the other elements for imposing a constructive trust have been satisfied, and the holder of the legal title is not a bona fide purchaser, a constructive trust may be imposed.").

Unlike the court of appeals, which utilized the cause of action for intentional interference with expected inheritance against Susan and James as a pathway to a constructive trust, Chief Justice Roggensack's dissent bases a potential constructive trust on "a claim for wrongful possession and conversion of property by Terry ...." See Chief Justice Roggensack's dissent, ¶76.

Complaint, ¶133.

Complaint, ¶134.

Complaint, ¶135.

Black's Law Dictionary defines "conversion" as "[t]he wrongful possession or disposition of another's property as if it were one's own." Black's Law Dictionary, 381 (9th ed. 2009). It is in that form that "conversion" is alleged against Terry in Steven's complaint.

Complaint, ¶143.

All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

Whether the claim for undue influence (Steven's second claim) was properly dismissed is not before us. The dismissal was not a final judgment with regard to Susan and James or Steven; therefore, Steven had no right to appeal its dismissal, and he could not bring it to us. Wis. Stat. § 808.03. The majority opinion errs when it relies on Steven's not appealing the dismissal of his claim for undue influence and states that the "only remaining cause of action" is the claim of intentional interference with expected inheritance. Majority op., ¶29.

Tikalsky v. Stevens, No. 2017AP170, ¶16, unpublished slip op., 382 Wis. 2d 830, 2018 WL 2422657 (Wis. Ct. App. May 30, 2018).

Complaint, ¶143.

The majority opinion mistakenly concludes that "Steven voluntarily dismissed" his allegations of wrongful possession that led to conversion of the property. Majority op., ¶35. That never happened. Steven's dismissal of his claim of unjust enrichment against Terry does not negate all the factual allegations in the complaint or the affidavits that Steven submitted in opposition to Susan's, James' and Terry's motions for summary judgment.

Wisconsin Stat. § 803.03(1)(b)2. provides: "PERSONS TO BE JOINED IF FEASIBLE. A person who is subject to service of process shall be joined as a party in the action if: ....
(b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: ....
2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

All three defendants are represented by the same attorney in this matter. Therefore, if counsel were to prevail on his arguments in favor of Terry and lose at trial, Susan and James could be adversely affected by his representation of Terry.

Majority op., ¶29 n.21.

Steven's affidavit sets out a significant adult sibling rivalry imposed during the course of Donald's cognitive decline, including specific acts by Terry that fed into family discord when Donald and Betty Lou were no longer well equipped to address it. He describes repeated acts of his siblings to preclude his access to both Donald and Betty Lou. R. 47.

John R. Pankraz averred that in 2006, it was apparent to him that Donald had suffered a "significant cognitive decline." R. 40, ¶8. He said, "Don Tikalsky then stated 'the kids want me to sue Steven.' The 'kids' referred to Steven Tikalsky's siblings, Terry, Jim and Susan." R. 40, ¶11.

E. John Raasch avers that Steven and his father had a strong relationship for many years that began to falter after Donald retired and his mental health declined. R. 39.